Brevard, J.
In this case the application was for a writ of prohibition, upon a suggestion filed, which was rejected by the District Court of Sumter; and the motion now to be decided, is, to reverse that determination, and direct the writ of prohibition to issue.
_ An application was made to me, at Chambers, in June, 1809, for a writ of prohibition in this case, and upon the same suggestion, which I refused to order, but not upon the merits. I was of opinion that a judge at Chambers had no power to grant such a writ, and that it must be awarded by the court in term. I am still of that opinion. (2 Sellon, 311. Will. Rep. 426. 4 Inst. 81.) Upon that occasion I doubted whether any court ought to grant a prohibition in a case of this sort, as the commissioners of the highways do not seem to come under the description of “ an inferior court their authorities and duties being ministerial, and not judicial. (6 Com. Dig. 3 Bl. Com. 111. 2 Sellon, 308.) It may, however, be said, that the commissioners of the roads have a power to fine, in certain cases, and in that respect may exercise judicial functions: *84 but I cannot think this power can be constitutionally exercised. But if it could, such exercise of power would not admit of controversy in a suit or prosecution at law, as the proceedings of a court of inferior jurisdiction.
On the present occasion, I am inclined, notwithstanding the doubts I still entertain on this point, to consider this case as one in which a writ of prohibition may be granted.
The suggestion complains of an undue exercise, and an unlawful stretch of delegated power.
The encroachment of jurisdiction, however, if any, is not upon the judicial, but on the legislative department of government, except as to fining beyond the sum of twenty dollars.
Before I enter into the general question, whether the application to the District Court ought to have been rejected, on the grounds relied upon in this motion, I feel no difficulty in declaring that, in my opinion, the court did right in refusing the writ of prohibition on motion, without hearing the other party on a rule to shew cause. v
As it appears to be a case obscured by some doubts, and those doubts depend on questions of fact which ought to be settled by a jury, the writ ought not to issue until a jury have first pronounced their verdict upon the facts, and thereby determined the right of the party claiming the benefit of this special writ, and the propriety of the courts interposing in that manner. (2 Ld. Raym. 220, 578. 1 Salk. 136, 33.)
The court, ought, therefore, in my opinion, to have ordered the party applying for 'the writ, to have declared in prohibition. This is always done before the writ issues, upon the service of a rule on the other party.
The declaration is founded on a supposed contempt for not obeying the writ; and the party against whom it is to issue has a sort of right, if the court inclines to grant the motion, to require the party applying for it, to declare, in order that the facts of the case may be tried and determined by a jury. (Cro. Eliz. 16, 94. 2 Sell. 324. Doug. 620. 2 H. Bla. 533.).
On this ground my opinion is, that the decision of the District Court was correct: but nevertheless, I think the rule to shew cause why a writ of prohibition should not issue, ought to have been ordered to issue ; and that this court ought now to order that to be done, which the District Court should have directed to be done.
Prohibition lies qfte% sentence, where the court awarding the sentence had no jurisdiction. (Cowp. 422. 1 Burr. 314.)
*85 On the general merits of the case, my opinion is in favor of the application. If it were'not so, I should deem it unnecessary to direct the issuing of a rule to shew cause, and put the applicant to the trouble of declaring in prohibition.
From the evidence reported to have been given in the District Court, which evidence ought, in my opinion, to have been submitted to a jury, upon an issue properly made up, in a suit founded on the suggestion, it appears satisfactorily enough to my mind, that the commissioners had no authority to meddle with Mr. Withers in relation to the matter in controversy: First, because the commissioners of the roads have no authority by law, to open, or direct to be opened, or kept open ; or alter, or direct to be altered, any road by virtue of any general delegation of power by the legislature. Secondly, because it does not appear that they were authorized to lay out or open the road in question, or keep the same open, by virtue of any special authority to them given, either expressly, or by intendment of law.
In order to express more clearly the opinion I entertain on this point, it seems necessary to advert to the law of England as it stood in relation to this subject anterior to our revolution.
Anciently, it is said, there were but four highways in England, free and common; and that all others were made through private persons’ grounds, on a writ of ad quod damnum,; by which inquisitions were made to ascertain, previously to opening new roads, whether they would be necessary or convenient for public purposes. (Bac. Abr. Tit. “ Highways.”)
And new roads cannot now be opened in England, nor ancient highways changed, without an inquisition ad quod damnum, that such a change will be no prejudice to the public. (1 Hawk. P. C. 201. 2 T. R. 106.)
Generally, each parish is bound to keep in repair the highways within the same. This was the general rule of the common law. (1 Vent. 183. 1 Ld. Raym. 725.)
Lord Coke distinguishes ways into three kinds ; (Co. Litt. 56, a.;) but public roads are best distinguished into two sorts, namely, highways and private roads, or paths. A highway is a principal road leading to a market town, or some place of general resort, and is commonly travelled by all hinds of people. Private roads are neighborhood ways, not commonly used by other than people of the neighborhood where they are, although they may be used by any one who may have occasion to do so. (1 Hawk. P. C. 210. Bac. Abr. “ Highways»” I W codes. Lect. 264.)
*86 If is not necessary to take notice of private ways, which do not concern the public generally. These are particular easements of a Pr*vate nature, which do not affect the present inquiry.
By the statutes of W. and M. and W. 3, in England, surveyors were appointed to superintend the making and repairing of highways ; and the justices of peace were authorized to enlarge them, and assess a compensation to the proprietors of adjoining lands, by the intervention of a jury. (3 Com. Dig. Tit. “ Chimin.”)
In some of our sister States, the courts of justice have the power of laying out and improving the public roads ; (1 Swift’s Syst. 103 ;) and if damage is done to any one thereby, the compensation is ascertained by a jury.
In general, a new road cannot be laid off, nor an old established road discontinued, without the authority of the legislature. This seems to be the rule in this country as in England. The legislative acts on this subject are numerous, as well before as since the Revolution.
An act of the year 1721, (P. L.) professes to establish a.general, uniform, and permanent law on the subject. It speaks of public add private “ paths,” as the object of the law, and certain commissioners are empowered to make, alter, and keep them in repair, by calling on the people inhabiting near them, in each respective parish, to bestow their labor, and contribute, by a proportionate tax, to defray the expenses necessary to the accomplishment of the ends in view.
By the words “ private paths,” it seems clear that the legislature meant roads free and common to all who might choose to make use of them ; that is to say, public ways diverging from and running across the main or principal roads or highways, commonly called “ great roads,” and not private paths exclusively appropriated for private purposes. It would lie preposterous to suppose the legislature intended to vest important powers in public commissioners, to open, improve, and keep in repair, private passages or easements for the particular and exclusive benefit of one or a few individuals.
The powers vested in the commissioners cannot, I think, fairly and consistently, be construed to mean a power to establish new roads, not ordered or directed by the legislature. If the acts of assembly on the subject are taken together, and considered as statutes in pari materia, no such power to open or lay out new roads, or discontinue old ones, can be intended, without some particular legislative direction. None of those acts contain an express unequivocal grant of such a power. The expression of the act of *87 1788, “ to make, alter, and keep in repair, if construed secundum ■Subjectam materiam, must mean a making, alteration, and preservation, of such roads as are, or shall be, established, or ordered to be laid out, and kept in repair by legislative authority, and not the vesting of a discretionary power in the commissioners to lay out, make, alter, and keep in repair, any roads that they may conceive necessary or proper.
This power cannot be implied from any of the acts of the legislature on the subject, if the same should be maturely considered and collated with other acts in pari materia.
The legislature have constantly exercised the right of directing what new roads shall be opened, and what old ones shall or may be discontinued, from the earliest period of our legislative and judicial history, down to the present time.
In some of the acts, passed near a century ago, provision is made for the allowance of a reasonable compensation to the owners of lands from which timber is authorized to be taken for building bridges, &c. In some cases the legislature specially authorize the1 commissioners to exercise a discretionary power in laying off a particular road, after directing its general course. (P. L. 394, 5.)
The county courts were empowered to exercise the rights vested in the commissioners of roads ; and were authorized to direct the building of bridges, &c. But the powers of the county courts no longer exist; and, therefore, it is unnecessary to pursue the inquiry in that respect.
In 1788, the mode of electing commissioners of roads was altered, and their powers and duties were extended, and more clearly defined. They were authorized and required to lay out, and keep in repair, all such high roads, &c., as were, or should be established by law, or as they should judge %neccessary, in their several parishes or districts. (P. L. 443.) It may seem, from the expressions used in this grant of power, that the commissioners were not afterwards to wait for any legislative direction in laying out new roads, or altering and amending them, or in omitting to repair old roads, or discontinuing them, as before was deemed necessary, but might use their own arbitrary will and discretion in all these respects. But a very little reflection, it seems to me, will be necessary to convince any intelligent unbiassed mind, that this construction ought not, and cannot'be established.
The construction must be given to this act in connexion with the other acts passed on the same subject, and the words supposed to give the arbitrary power contended for, ought to be taken reddendo *88 singula singulis. Under these restraints, the power granted to commissioners of the roads will not be an absolute discretionary power, but a discretionary power within certain prescribed li- and conditionál as to the manner in which it is to be exercised. The roads to be laid out, or omitted to be laid out, or repaired, or altered, must be public roads, directed by the legislature to be opened, or kept in repair. The commissioners may judge of the propriety or necessity of executing the orders of the legislature so tar as a discretionary power seems to have been-intended.
That the legislature at different times since 1788, understood this act in the same way that I haVe done, seems evident from-their acts ; for different acts direct the opening of new roads in; various directions, and the discontinuance of old ones: and spe--cial commissioners are appointed most commonly by the legislature,to carry these directions into effect. Even the act of 1788, directs-the laying off of new roads. An act of 1809, requires all persons petitioning for new roads, to give notice thereof to the commissioners of the roads.
It is not necessary, on the present occasion, to inquire as to the right of the legislature to appropriate private property, or render it common, as a public easement, without an adequate compensation. I incline to think it cannot, at any rate, that it ought not to be done.
To conclude, I am of opinion, for the reasons I have stated, that the application for the writ of prohibition was properly overruled ; but that the court should have ordered the party applying for it, to declare in prohibition, and have put the questions of fact in a train for trial, in order to ascertain the right of the applicant to the writ: and this ought, in my opinion; now to be done by this court.